UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/2023
```

UNITED STATES OF AMERICA,

                    -against-

JOSEPH NEUMANN,

                                        Defendant.

21-CR-439-01 (NSR)
OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

     Defendant Joseph Neumann ("Neumann" or "Defendant") is charged in a five-count

Indictment with: (1) Aiding and Assisting in Preparation of False and Fraudulent U.S. Individual

Income Tax Returns in violation of 26 U.S.C. § 7206(2) (Counts I and II); (2) Failure to File

Tax Returns in violation of 26 U.S.C. § 7203 (Counts III and IV); and (3) Conspiracy to Operate

an Unlicensed Money Transmitting Business in violation of 26 U.S.C. § 1960 (Count V). (ECF

No. 1, "Indictment.") Before the Court is the Government's motion *in limine* (the "Motion").

(ECF No. 49, "Gov't Mot.") Although the Court set a briefing schedule for the parties to submit

moving papers, responses, and replies, Defendant did not file a motion *in limine* or a response

to the Government's Motion. (*See* Minute Entry dated 10/12/2023.)

     For the following reasons, the Government's Motion is GRANTED in part and DENIED

in part.

## **BACKGROUND**

     On July 6, 2021, a Grand Jury sitting in the Southern District of New York returned a five-

count indictment against Defendant based on the Government's allegations that he participated in

two interconnected schemes to defraud the Internal Revenue Service ("IRS") of taxes from 2014

to 2018. (*See* Indictment.)

*a.   Illegal Money Laundering Scheme*

The Government alleges the following with respect to this scheme:

In or around May 2014, a cooperating witness (the "CW") began meeting with a man, Alter Landau, and his son, Chaskel Landau, to discuss a real estate investment opportunity. (Gov't Mot. at 2.) The CW indicated he was interested in investing in the Landaus' real estate development, but he was unable to access much of his money because it was criminal proceeds. (*Id.*) In or around November 2014, after having discussed the idea with the CW for months, the Landaus proposed a solution—the Defendant could "wash" the CW's money, which Defendant had done before to hide income from the Government. (*Id.* at 2–3.) In June 2015, the CW met with Defendant and the Landaus at Defendant's residence where the CW explained his problem. (*Id.* at 3.) Defendant immediately proposed beginning to launder the money in stages, and then explained the process and his fee for doing so. (*Id.* at 3–4.) Specifically, Defendant discussed an arrangement in which he would accept cash from the CW and then write a check payable to an entity designated by the CW in exchange for a fee of ten percent of the amount of cash. (Indictment ¶ 10.)

In accordance with that arrangement, on July 24, 2015, Defendant first accepted $15,031 in cash from the CW and gave the CW a check for approximately the same amount. (Gov't Mot. at 4.) On September 27, 2015, the CW gave Defendant $69,000, and received the same amount in cash from Defendant. (*Id.* at 5.) On November 3, 2015, Defendant accepted $165,280 in cash from the CW and gave the CW two checks in the total amount of $150,280, retaining the difference of $15,000 as his fee for laundering the cash. (*Id.*; Indictment ¶ 10.) On December 24, 2015, Defendant lastly accepted $247,500 in cash from the CW and gave the CW two checks in the total amount of $225,000 while retaining the difference of $22,500 as his fee for laundering the cash. (Gov't Mot. at 6; Indictment ¶ 10.) For each of these transactions, the Government claims

Defendant obscured the true nature of the transactions by using the bank account of his real estate company and writing checks to a shell company the CW claimed to control. (Gov't Mot. at 4-6.) The negotiations between Defendant and the CW ceased once the CW failed to invest money in the real estate venture. (Gov't Mot. at 6.)

In relation to this scheme, the Government charges Defendant with one count of conspiracy to operate an unlicensed money transmitting business (an offense under 18 U.S.C. § 1960), in violation of 18 U.S.C. § 371. (Indictment ¶¶ 7–10.) The Government alleges that from at least September 2014 to August 2016, Defendant knowingly and willfully conspired and agreed with others to transmit approximately $6 million that he and others believed to be stolen, using real estate companies and charities under their control, which failed to comply with the money transmitting business registration requirements set forth in federal law and regulations. (*Id.* ¶¶ 8–9.)

b. *Tax Evasion Scheme*

Between 2015 and 2018, the Government alleges Defendant failed to report to the IRS millions of dollars in consulting fees he received from Greenbaum's Pharmacy ("Greenbaum's"), a business owned by Defendant's friend, Hershel Grunbaum. (Gov't Mot. at 6.) In 2015, Defendant disclosed some, but not all, of his income; in 2017 and 2018, Defendant did not file a tax return at all. (*Id.*) The Government alleges Defendant hid the payments by: (1) arranging for Greenbaum's to deposit money into the bank accounts of his real estate company, which did not provide any services to Greenbaum's or have any connection to the services Defendant provided; (2) arranging for Greenbaum's to pay third parties on Defendant's behalf; (3) issuing checks to Defendant that were then endorsed to third-parties; and (4) falsely reporting that payments from Greenbaum's were loans when they were payments for services rendered. (*Id.* at 6-7.)

In relation to this scheme, the Government charges Defendant with two counts of aiding and assisting in the preparation of false and fraudulent individual income tax returns, in violation of 26 U.S.C. § 7206(2). (Indictment ¶¶ 1–3.) Specifically, the Government alleges that in the individual income tax returns he filed for 2015 and 2016, Defendant reported only a portion of the more than $2.5 million in payments he received from Greenbaum's. (*Id.* ¶ 2.) The Government claims Defendant willfully, knowingly, and fraudulently caused his tax return preparer to omit income he received on his 2015 and 2016 tax returns, substantially understating his total income as set forth below (*Id.* ¶ 3):

| COUNT | FILING DATE | TAX YEAR | UNREPORTED INCOME | TAX LOSS |
|-------|-------------|----------|-------------------|----------|
| ONE | 10/01/2016 | 2015 | $1,268,765 | $368,888 |
| TWO | 09/28/2017 | 2016 | $843,332 | $229,632 |

Additionally, the Government charges Defendant with two counts for failure to file individual income tax returns for the years of 2017 and 2018 despite receiving a total of more than $1.7 million in income in those years, in violation of 26 U.S.C. § 7203. (*Id.* ¶¶ 4–6.) The Government alleges that Defendant knowingly and willfully failed to make returns and supply information, as required by law and regulations, as set forth below (*Id.* ¶ 6.):

| COUNT | TAX YEAR | FILING DEADLINE | UNREPORTED INCOME | TAX LOSS |
|-------|----------|-----------------|-------------------|----------|
| THREE | 2017 | 04/17/2018 | $473,993 | $205,828 |
| FOUR | 2018 | 07/15/2020 | $1,045,575 | $441,694 |

## **LEGAL STANDARD**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without

lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–cr–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S.Ct. at 163)).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Yet, the Court may still exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Although the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court retains "broad discretion to balance probative value against possible prejudice" under Federal Rule of Evidence 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

## DISCUSSION

In its motion in *limine*, the Government asks the Court to rule as follows: (1) permit testimony from the CW concerning certain statements made by Neumann's alleged co-conspirators in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E) ("Rule 801(d)(2)(E)"); (2) certain email correspondence concerning the preparation of Neumann's tax returns is non-hearsay; (3) admit evidence concerning Neumann's tax paying history and business experience on the issue of willfulness; (4) permit the Government to introduce a summary chart into evidence under Federal Rule of Evidence 1006 ("Rule 1006"); (5) permit the Government to

use demonstratives and transcripts of recordings as jury aids during its case-in-chief Federal Rule of Evidence 611(a) ("Rule 611(a)"); and (6) preclude Neumann from referencing or eliciting testimony about his personal circumstances that are unrelated to criminal liability and are instead aimed primarily at securing the sympathies of the jury. (Gov't Mot. at 1.) The Court addresses each issue in turn.

### I.   Out-of-Court Statements by Defendant's Alleged Co-Conspirators

Rule 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if ... the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). To admit a statement pursuant to this rule, a district court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). A statement is made in furtherance of a conspiracy if "designed to promote or facilitate achievement of the goals of that conspiracy." *Glenn v. Bartlett*, 98 F.3d 721, 728 (2d Cir. 1996). A statement need not be made by one co-conspirator to another co-conspirator in order to be in furtherance of a conspiracy. *United States v. Green*, 887 F.2d 25, 27–28 (1st Cir. 1989) (coconspirator's statement to shooting victim admissible against co-defendant under Rule 801(d)(2)(E)); *see United States v. Gupta*, 747 F.3d 111, 125 (2d Cir. 2014) (a statement need not be made to a member of the conspiracy to be admissible under Rule 801(d)(2)(E) because "[s]tatements designed to induce the listener's assistance with respect to the conspiracy's goals satisfy the Rule's in-furtherance requirement").

Although only co-conspirator statements made "in furtherance" of the conspiracy are admissible under Rule 801(d)(2)(E), the standard for what qualifies as a statement "in furtherance"

of a conspiracy is not very restrictive. The requirement that the challenged statement be "in furtherance of" the conspiracy is satisfied if the statement's objective is "designed to promote or facilitate achievement of the goals of the conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). It permits, for example, introduction of any co-conspirator statement that "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).

The Second Circuit has held that co-conspirator statements that "provide reassurance, or seek to induce a co-conspirator's assistance, or serve to foster trust and cohesiveness or inform each other as to the progress or status of the conspiracy" further the ends of the conspiracy, *United States v. Desena*, 260 F.3d 150, 159 (2d Cir. 2001), as do statements "that apprise a co-conspirator of the progress of the conspiracy," *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987). *See United States v. Amato*, 15 F.3d 230, 234 (2d Cir. 1994) (statement apprising co-conspirator in loansharking conspiracy of status of loan was made in furtherance of the conspiracy); *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989) (statement among conspirators that defendant was receiving proceeds of extortion was in furtherance of conspiracy because it informed conspirators of status of conspiracy).

The Government asks the Court to allow the CW to testify about certain out-of-court statements made to him by Defendant's alleged co-conspirators, Alter and Chaskel Landau, throughout 2014 and 2015. (Gov't Mot. at 9.) Specifically, the Government intends for the CW to testify during its case-in-chief that:

(1) On or about November 5, 2014, Alter Landau told the CW that Neumann "wants to help" clean the CW's money, that Neumann moves millions of dollars, and that Neumann "is going to do this for us" and "used to do it for us." Alter also described a phony loan structure through which the CW would receive a document "as if [he'd]

already paid the loan."

(2) On or about June 1, 2015, Chaskel Landau told the CW that Neumann "is a silent partner of ours, and if he says yes, it's yes, simple."

(*Id.* at 10.) The Government argues these statements are admissible pursuant to Rule 801(d)(2)(E) because they were intended to further the goals of the conspiracy. Specifically, the Government argues the statements were made by the co-conspirators to the CW, who they wanted to join the conspiracy, and were intended to facilitate a meeting between the CW and Defendant to discuss the movement of the CW's funds. (*Id.*) Most significantly, the Government points out that the first statement "expressly describes the means of unlawfully transmitting the CW's money, which is unquestionably relevant to and intended to further the goals of the conspiracy." (*Id.*) The Court agrees. The two statements are plainly intended to facilitate the CW joining the conspiracy by explaining the method of transmitting the CW's funds and by facilitating the CW partnering with Defendant to do so, and they thus promote the goals of the alleged conspiracy to transmit millions of dollars for the CW.

Moreover, the Court agrees that "there is sound reason to believe that [the defendant] joined when he was generally aware of what his new partners had been doing and saying on behalf of the enterprise." (*See* Mot. at 11 (citing *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986)) (citing 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 801(d)(2)(E)[01], at 250–51 (1985)); *United States v. Saipov*, No. 17-CR-722 (VSB), 2023 WL 4199415, at *5 (S.D.N.Y. June 27, 2023) (same)).). Defendant agreeing to transmit $15,000 for a "test run" mere days after Chaskel Landau made the second statement, and then later receiving $15,031 from the CW before giving the CW that exact same amount via check, indicates Defendant had a general awareness of the Landaus' activity. (*Id.* at 4.)

Accordingly, the Court admits the two statements made by the Landaus to the CW.

## II.      Statements Made in Emails Discussing the Preparation of Neumann's Taxes

Under Rule 801(d)(2)(C), a statement is not hearsay if it "was made by a person whom the party authorized to make a statement on the subject." Fed. R. Evid. 801(d)(2)(C). A writing by an agent of a party that was written and researched with the party's permission and authority with free access to the party's books and information and then circulated by the party constitutes an admission under Rule 801(d)(2)(C). *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 260 (S.D.N.Y. 2003) (citation omitted).

Under Rule 801(d)(2)(D), a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship while it existed." Fed. R. Evid. 801(d)(2)(D). As the Second Circuit has noted, "admissibility under this rule should be granted freely." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992). "A sufficient foundation to support the introduction of such vicarious admissions therefore requires only that a party establish (1) the existence of [an] agency relationship [between the declarant and employer], (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Id.*; *accord Farganis v. Town of Montgomery*, 397 Fed.Appx. 666, 668 (2d Cir. 2010) (summ. order). Notably, "this foundational predicate may be established by circumstantial evidence." *Farganis*, 397 Fed.Appx. at 686 (internal quotation marks omitted) (quoting *Pappas*, 963 F.2d at 537).

The Government intends to introduce evidence at trial that two men helped Defendant prepare his income taxes during the relevant period: Ben Kasirer and David Singer. (Gov't Mot. at 13.) According to the Government, Kasirer prepared and filed Defendant's tax returns, while Singer gathered relevant information for doing so. (*Id.*) Accordingly, the Government asks the Court rule Exhibits A through D—email correspondence between Kasirer and Singer relating to

the preparation of Defendant's tax returns—are admissible. Exhibits A through D are comprised of the following:

> (1) Exhibit A contains an email from Singer to Kasirer, in which Singer provides information about fees Greenbaum's Pharmacy purportedly paid to Neumann in tax year 2015.
>
> (2) Exhibit B is a set of notes taken in connection with Kasirer's preparation of Neumann's tax return for tax year 2016.
>
> (3) Exhibit C is an email sent from Kasirer to Singer in October 2018, in which Kasirer asks Singer to confirm Kasirer's assumption that they will be filing Neumann's tax return late that year.
>
> (4) Exhibit D is an email sent from Kasirer to Singer in September 2019, in which Kasirer informs Singer that he had repeatedly contacted Neumann about his tax forms but had "not received a response."

(Gov't Mot. at 13.) The Government argues that Exhibits A through D are admissible as non-hearsay under Rules 801(d)(2)(C) or 801(d)(2)(D) because "the statements in those exhibits concerned the preparation of Neumann's tax returns and were made by a person that Neumann had authorized to help him with tax-related issues (Singer) and a person that Neumann had hired to prepare and file his income tax returns (Kasirer)." (*Id.*)

To the extent that the Government lays sufficient foundation, the statements made by Kasirer and Singer pursuant to preparing Defendant's tax returns are not hearsay. *See AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 117CV598BKSCFH, 2022 WL 2643583, at *15 (N.D.N.Y. July 8, 2022)) (statements made by employees during the course of their employment are admissible as not hearsay); *In re Rsrv. Fund Sec. & Derivative Litig.*, No. 09 CIV. 4346 PGG, 2012 WL 12354233, at *5 (S.D.N.Y. Oct. 3, 2012) (same); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, No. 09 CIV. 3255, 2012 WL 2568972, at *4 (S.D.N.Y. July 3, 2012) (admitting documents authored plaintiff's auditors under Rule 801(d)(2)(D)). Kasirer and Singer are "agents" of Defendant pursuant to Rules 801(d)(2)(C) or 801(d)(2)(D) when hired to file his tax returns,

and statements made in emails regarding the filing of those tax returns are clearly within the scope of that relationship.

Even if the Court declined to admit Exhibits A through D as non-hearsay under Rules 801(d)(2)(C) or 801(d)(2)(D), the Government argues that the statements contained in those exhibits are non-hearsay as the Government intends to proffer them for reasons other than the truth of the matter asserted. (Gov't Mot. at 12.) The Court agrees—none of the identified statements are being offered for their truth:

- Exhibit A: The statement that Greenbaum's paid Defendant $450,000 in fees in 2015 is being offered for its falsity, rather than its truth. (Gov't Mot. at 14.) The Government intends to introduce it to show Defendant received more than $1.7 million in fees. (*Id.*).

- Exhibit B: Similarly, the statement "None per David Singer" together with the crossed-out bullet point "Schedule C: Fees from Greenbaum" are being introduced to show their falsity and their effect on the listener. (Gov't Mot. at 14-15.) The Government again intends to show that Defendant received $840,000 in fees. (*Id.*)

- Exhibit C: The Government seeks to introduce the statement "David I assume we will be filing late this year[]" as relevant to proving Defendant's willfulness. (Gov't Mot. at 15.) The Government argues that through this statement, Kasirer suggests it was necessary to file a 2017 tax return, and therefore it is admissible not to prove that the 2017 tax return will be filed late or that Kasirer had assumed it would, but rather for the mere fact it was uttered. (*Id.*)

- Exhibit D: Similarly, the statement from Kasirer to Singer "I emailed the forms to Joe, then sent a second email as a follow up, but I have not received a response,"

11

which the Government argues suggests Neumann needed to file a 2018 tax return,

is admissible for the mere fact it was made and relevant to showing willfulness.

(*See* Gov't Mot. 15.)

Because none of these statements are offered for their truthfulness, they are admissible.

Fed. R. Evid. 801(c) advisory committee's notes ("If the significance of an offered statement lies

solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the

statement is not hearsay."); s*ee also Anderson v. United States*, 417 U.S. 211, 219–20 94 S. Ct.

2253, 41 L. Ed. 2d 20 (1974) (admitting statements made during testimony that were intended to

"establish a foundation for later showing, through other admissible evidence, that they were

false"); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show

its effect on the listener is not hearsay."). Moreover, the statements surrounding the specific

statements identified in the bullet points above are admissible as context. (*See* Gov't Mot. at 13-

15); *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011) ("Where a

statement is deemed admissible as an admission by a party-opponent under Rule 801(d)(2), the

surrounding statements providing essential context may also be considered.") (citation omitted).

### III.    Defendant's Tax Filing History and Professional Background

The Government also seeks to introduce evidence of Defendant's tax filing history and his

professional background to prove willfulness, an element of Counts I through IV for preparing

false income tax returns and failing to file tax returns. (Gov't Mot. at 16.) The Government will

likely seek to introduce the following circumstantial evidence: (1) documents and testimony

concerning Defendant's tax return for tax year 2014, for which he reported all income he received

from Greenbaum's as taxable income and (2) evidence of Defendant's ownership of numerous

companies, including valuable real-estate companies. (*Id.* at 16-17.) The former, the Government

argues, demonstrates that Defendant knew filing a tax return was required by law and that the income he received from Greenbaum's was taxable income requiring disclosure. (*Id.* at 17.) The latter, the Government continues, shows Defendant knew he had to report millions of dollars in consulting income on his income tax returns. (*Id.*)

The requirement to prove "willfulness" in criminal tax laws "is designed to separate the purposeful violator from the well-meaning, but easily confused, mass of taxpayers." *United States v. MacKenzie*, 777 F.2d 811, 818 (2d Cir. 1985) (citing *United States v. Bishop*, 412 U.S. 346, 93 S. Ct. 2008, 20 36 L. Ed. 2d 941 (1973)). "Willfulness may be inferred from circumstantial evidence." *United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996). The Second Circuit has held evidence of a defendant's background and prior adherence to the tax laws is relevant to proving willfulness in committing tax crimes. *See id.* ("Patterns of understanding or failing to report income are also considered evidence of willfulness.") (citation omitted); *MacKenzie*, at 818 (jurors could infer defendants knew their tax duties and acted willfully because they had been shown to adhere to their duties on other occasions and had business and tax experience); *United States v. Gilmartin*, 684 F. App'x 8, 11 (2d Cir. 2017) (defendant's "advanced education level" and "history of filing valid tax returns" sufficient to establish willfulness).

Accordingly, the Court will allow the Government to introduce evidence of Defendant's prior tax filing history and business background as evidence of willfulness.

## IV. Summary Chart Tracing the Funds Greenbaum's Pharmacy Paid to Defendant

Pursuant to Federal Rule of Evidence 1006, The Government seeks permission to introduce a chart summarizing the funds Greenbaum's Pharmacy paid to Defendant between tax years 2015 and 2018, including the accounts and other locations where the funds were sent. In support, the Government argues: (1) "the chart will summarize voluminous records that cannot be examined

easily in court"; (2) "the underlying records were all produced to Neumann during discovery"; (3) "the underlying records are themselves [] admissible." (Gov't Mot. at 20.)

Federal Rule of Evidence 1006 provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writing, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. "A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized and must be based upon and fairly represent competent evidence already before [the Court]." *Fagiola v. Nat'l Gypsum Co. ACS., Inc.,* 906 F.2d 53, 57 (2d Cir. 1990) (internal quotation marks and citations omitted).

The Governments states the chart will summarize information from "hundreds of pages of bank account documents produced by several banks, as well as dozens of pages of ledgers produced by Greenbaum's Pharmacy." (Mot. at 19.) Moreover, the Government indicates Defendant has received the underlying records during discovery, and the records are likely admissible. *Bridgeway Corp. v. Citibank*, 91 F. App'x 727 (2d Cir. 2004) (district court did not abuse discretion admitting bank records under Rule 803(6)). Finally, Defendant shall have the opportunity to review and object to the summary chart, and therefore the Court grants the Government's request subject to Defendant's objections. *See United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 461441, *8 (S.D.N.Y. Jan. 18, 2018), *aff'd*, 820 F. App'x 23 (2d Cir. 2020) (admitting summary evidence of bank records and tax filing history subject to Defendant's objections).

## V.   Demonstratives and Transcripts of Recordings as Jury Aids

In addition to the summary chart of funds paid to the Defendant by Greenbaum's Pharmacy, the Government also seeks to admit "various demonstratives and transcripts of recorded meetings" pursuant to Federal Rule of Evidence 611(a). (Gov't Mot. at 20.) Under Rule 611(a),

summary charts are a "pedagogical device intended to aid the jury's understanding of testimony concerning a complex subject." *United States v. Dolney*, No. 04-CR-159 (NGG), 2005 WL 2129169, at *4 (E.D.N.Y. Sept. 1, 2005), *aff'd sub nom. United States v. Pirgousis*, 290 F. App'x 388 (2d Cir. 2008). Unlike exhibits admitted into evidence under Rule 1006, Rule 611(a) materials are not admitted into evidence. *Id.*

For the same reasons stated above, subject to Defendant's review and objection, the Court preliminarily grants the Government's request. *See Scali*, 2018 WL 461441, at *8 (admitting pedagogical aids subject to Defendant's objections).

## VI.    Defendant's Testimony regarding Personal Factors

The Government seeks to exclude evidence and arguments relating to (1) tragedies in Defendant's personal life; (2) his generosity to his community; (3) any potential health issues he may be experiencing; and (4) any other similar factors unrelated to his criminal liability. (Gov't Mot. at 21–22.) The Government seeks to exclude such evidence as irrelevant to proving elements of the crime charged and an appeal to the jury's sympathies. (*Id.* at 22.) If the Court determines such evidence is relevant, then the Government argues it should still be excluded as any potential probative value would be substantially outweighed by unfair prejudice. (*Id.* at 23.)

"[T]he trial court is entitled to wide discretion concerning the admissibility of background evidence." *United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988). At present, the defense has not indicated whether they intend to introduce information on Defendant's background. If Defendant so intends, the Court will assess the relevance, probative value, and potential prejudicial effect of any such evidence proffered by the Defendant, and will exclude any evidence that is not relevant, lacking in probative value, or substantially more prejudicial than probative. Without knowing the evidence Defendant intends to introduce, the Court preliminarily denies the

Government's request to preclude testimony on Defendant's background. *See United States v. Inniss*, No. 18-CR-134 (KAM), 2019 WL 6999912, at *9 (E.D.N.Y. Dec. 20, 2019).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Government's motion *in limine* is GRANTED in part and DENIED in part. Specifically, the Court grants the Government's motion and admits: (1) testimony from the CW concerning certain statements made by Defendant's alleged co-conspirators in furtherance of the conspiracy pursuant to Rule 801(d)(2)(E); (2) certain email correspondence concerning the preparation of Defendant's tax returns; (3) evidence concerning Defendant's tax paying history and business experience on the issue of willfulness; (4) a summary chart pursuant Rule 1006; and (5) demonstratives and transcripts of recordings as jury aids during the Government's case-in-chief pursuant to Rule 611(a). The Court preliminarily denies the Government's motion to preclude Defendant from referencing or eliciting testimony about his background.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 49.

Dated:   December 14, 2023                                       SO ORDERED:
         White Plains, New York

                                                                 NELSON S. ROMÁN
                                                                 United States District Judge